*Jr., Clarence M. Mullin, Carter R. Page,* for appellee (case no. A99A1258).

A99A0665. INTERNATIONAL INDEMNITY COMPANY
v. REGIONAL EMPLOYER SERVICE, INC.
(520 SE2d 533)

McMURRAY, Presiding Judge.

Plaintiff International Indemnity Company filed this action to recover premiums allegedly due on workers' compensation insurance policies issued to defendant Regional Employer Service, Inc. Defendant answered and counterclaimed for damages to its business caused by excessive premiums charged for workers' compensation insurance due to incorrect data submitted by plaintiff to the licensed rating organization. On the trial of the case, a jury returned a verdict in favor of defendant and awarded, on the counterclaim, special damages of $109,000 and attorney fees of $23,006. The judgment followed the verdict, and plaintiff appeals. *Held*:

1. Violation of OCGA § 33-24-47 is listed among the bases for defendant's claims in the consolidated pre-trial order. The alleged violation was a cancellation of certain workers' compensation coverage. By motion in limine, plaintiff sought to exclude evidence of losses arising from the cancellation and at trial moved for directed verdict as to defendant's counterclaim for wrongful cancellation. The denial of both motions is enumerated as error. However, plaintiff concedes that defendant "introduced no evidence and did not request a charge on O.C.G.A. § 33-24-47" which formed the basis of defendant's wrongful cancellation claim, and that "there was an absence of 'any evidence' in support of a claim for wrongful cancellation." While plaintiff argues that the wrongful cancellation claim should not have been submitted to the jury, it is apparent that in fact it was not. It follows that any error in the denial of these motions was harmless and does not serve as a proper basis for reversal. In order to obtain reversal on appeal, harm as well as error must be shown. *Sparti v. Joslin,* 230 Ga. App. 346, 350 (3) (496 SE2d 490); *Walker v. GRO Assoc.,* 227 Ga. App. 569, 570 (2) (489 SE2d 366).

2. Plaintiff's first enumeration of error complains of the denial of its motion in limine seeking to preclude defendant from offering or otherwise alluding to lost profits, lost income, diminished corporate reputation and diminution in value as a result of any alleged noncompliance with OCGA § 34-9-136.

A motion in limine is a pretrial method of determining the admissibility of evidence, as a party may secure a pretrial

ruling on the admissibility of evidence or a ruling prohibiting any reference to certain evidence until its admissibility can be assessed in the context of the trial as it unfolds. *State v. Johnston*, 249 Ga. 413 (3) (291 SE2d 543) (1982). By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. See Green, Georgia Law of Evidence, p. 26, § 12, n. 5. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

*Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817). See also *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4 (6) (505 SE2d 549).

In this particular instance, the transcript does not clearly indicate whether the trial court ruled on the portion of plaintiff's motion in limine now at issue. Nonetheless, we will assume for purposes of this opinion that the contested portion of the motion in limine was denied as plaintiff maintains.

OCGA § 34-9-136 requires a workers' compensation insurance provider to submit statistical data to the employer which it concerns for verification prior to sending the data to a licensed rating organization which will use the data in determining the employer's experience modification factor, an expression of risk factors which affects premium rates. In support of the first enumeration of error, plaintiff argues at length that OCGA § 34-9-136 does not create a private cause of action. Defendant responds that violation of the statute provided it with a negligence per se cause of action against plaintiff. However, this issue, concerning the existence and nature of any cause of action arising from a violation of the statute, is not determinative of the question of the admissibility of the evidence plaintiff sought to exclude.

As applied with respect to the circumstances of the case sub judice, we find that regardless of whether a violation of OCGA § 34-9-136 may serve as the proper foundation of a counterclaim asserted by defendant, evidence showing the statutory violation does not lack probative value since it is a circumstance that may be considered by the jury along with other facts and circumstances with respect to issues of mitigation of damages and set-off in connection with plaintiff's claim for amounts owed for unpaid premiums. *Allen v. Lefkoff, Duncan, Grimes &c., P.C.*, 265 Ga. 374, 377 (2) (c) (453 SE2d 719); *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 87, n. 1 (460 SE2d 545). The evidence having relevance to the issues on trial with respect to plaintiff's claim, the denial of the motion in limine was not

error. *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 7 (3) (497 SE2d 616).

3. Plaintiff enumerates as error the trial court's refusal to give its requested charge that: "The measure of damages for an allegedly excess and incorrect premium is the difference between that which was paid and the correct amount due as shown by the evidence." This request to charge was supported by citation of *Dixie Constr. Products v. Southeastern Council on Compensation Ins.*, 183 Ga. App. 101 (357 SE2d 831) and *Walker v. Bituminous Cas. Corp.*, 74 Ga. App. 517 (40 SE2d 228). Via this request plaintiff sought to provide a measure of damages for use with respect to defendant's counterclaim for loss of business. However, defendant's counterclaim and the evidence introduced in support thereof authorized a broader measure of damages, the reduction in value of defendant's business. *Molly Pitcher Canning Co. v. Central of Ga. R. Co.*, 149 Ga. App. 5, 15 (8) (253 SE2d 392). The charge requested by plaintiff cannot be said to have been adjusted to the evidence presented at trial; thus, there was no error in the refusal of this requested instruction. *Roberts v. Chapman*, 228 Ga. App. 365, 367 (2) (492 SE2d 244); *Smith v. Curtis*, 226 Ga. App. 470, 471 (2) (486 SE2d 699).

4. In support of two enumerations of error complaining of the denial of motions for directed verdict, plaintiff argues that defendant failed to prove damages with respect to its counterclaim for loss of business. It is uncontroverted that the jury was correctly charged that

> [t]he measure of damages for that claim is the difference between the fair market value of the damaged property or the business immediately before the injury and the fair market value that remains when the business is stopped, together with any losses incurred in the interim.

After having examined the evidence referenced by defendant with respect to this issue, and having carefully surveyed all of the evidence as to damages presented at trial, we must conclude that plaintiff's assertion is incorrect.

> [T]he rule against recovery of speculative damages relates primarily to speculation regarding proximate cause rather than extent. See *Ga. Ports Auth. v. Servac Intl.*, 202 Ga. App. 777 (3) (415 SE2d 516) (1992). Once a plaintiff establishes that damages proximately flow from the defendant's alleged conduct, "mere difficulty in fixing their exact amount" should not be a legal obstacle to recovery. See id. at 780.

*Freeman v. Pittman*, 220 Ga. App. 672, 674 (2) (469 SE2d 543).

Defendant presented the testimony of an accountant on the valuation of defendant's business. The accountant testified that he had been asked to establish the value of the business on December 31, 1991, and began his testimony with respect to valuation of defendant's business on that date. The accountant testified as to his estimate of valuation and how that figure would be influenced by various hypothetical alterations of the underlying data. On both direct and cross-examination, the accountant expounded at length on the nature and value of the assets of the defendant's business under various circumstances. Eventually, the accountant was asked to consider circumstances which clearly were those that caused the damages for which defendant sought a recovery and reflected upon the value of defendant's business after the date of the injury allegedly caused by plaintiff. There were undoubtedly gaps in the data concerning the post-injury valuation of defendant's business, perhaps explained in part by the loss or destruction of certain financial records, and little explicit distinction between the pre-injury and post-injury time periods. Nonetheless, the testimony of the accountant, along with other evidence including the testimony of defendant's owner, was sufficient to provide the jury with a reasonable basis for determining the diminution in the value of defendant's business allegedly caused by plaintiff. *Scriver v. Lister*, 235 Ga. App. 487, 489 (2) (510 SE2d 59); *MARTA v. Green Intl.*, 235 Ga. App. 419, 422 (1) (509 SE2d 674); *Gipson v. Phillips*, 232 Ga. App. 235, 236 (501 SE2d 570); *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 796 (2) (432 SE2d 238). Thus, the denial of plaintiff's motion for directed verdict on this basis was not error.

5. Next, plaintiff contends the trial court erred in denying its motion for directed verdict on the grounds that defendant failed to prove proximate cause. Plaintiff's vice-president admitted that plaintiff had not begun submitting the data, which it provided to the rating organization concerning defendant, to defendant for verification in compliance with OCGA § 34-9-136 in the period following the July 1, 1992 effective date of the statute. This witness also acknowledged that if inaccurate data were supplied to the rating organization, such would result in inaccurate premiums being charged an insured. Defendant presented evidence that plaintiff reported inaccurate data to the rating organization, resulting in excessive premiums which damaged its business.

Thus, there was no lack of proof under the applicable "any evidence" standard with respect to the element of proximate cause, and the trial court did not err in denying the motion for directed verdict on this basis. *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 322 (5) (486 SE2d 851); *Dept. of Transp. v. Blair*, 220 Ga. App. 342, 344-345 (1) (b) (469 SE2d 446).

6. Nor did the trial court err in denying plaintiff's motion for directed verdict with respect to attorney fees under OCGA § 13-6-11. There was ample evidence that plaintiff acted in bad faith by failing to verify the data which formed the basis of the premium charged defendant and failing to respond in any constructive fashion when defendant sought correction of erroneous premiums. *Kopp v. First Bank of Ga.*, 235 Ga. App. 520, 524 (3) (509 SE2d 384); *Evans Toyota v. Cronic*, 233 Ga. App. 318, 322 (3) (b) (503 SE2d 358).

Also, contrary to plaintiff's assertion, defendant's counterclaim is viable and thus authorizes the claim for attorney fees. Furthermore, defendant presented evidence as to the amount of attorney fees attributable solely to the prosecution of the counterclaim and the verdict returned by the jury was well within that figure. Compare *Lineberger v. Williams*, 195 Ga. App. 186, 188 (3) (393 SE2d 23).

7. Plaintiff's final enumeration of error complains of the trial court's permitting defendant's "Exhibit 50" to go out with, and be considered by, the jury during deliberations after having ruled that said exhibit could be used for demonstrative purposes only. When the exhibit was initially offered into evidence, plaintiff objected to it going out with the jury because it would be continuing testimony in the jury room. At the same time, plaintiff conceded that defendant could use the exhibit for demonstrative purposes only. Defendant's attorney stated that he wanted to use the exhibit only for demonstrative purposes and did not care if it got into evidence. The trial court permitted defendant to use the exhibit for the agreed purpose and acknowledged that these circumstances had in effect caused the withdrawal of the offer of the exhibit into evidence and eliminated the plaintiff's objection.

Some time later when the trial court and counsel were reviewing the exhibits, plaintiff's counsel stated that he thought one of the exhibits, "Exhibit 50" had not been admitted. The court reporter stated that he had the exhibit recorded as admitted over objection, and plaintiff's counsel, as well as the trial court, acquiesced to that statement. It thus appears that any procedural error arose from the apparently faulty recollection of the court reporter rather than any ruling of the trial court. Such a procedural irregularity, which apparently caused an exhibit which had not been admitted into evidence to go out with the jury, should have been objected to at the time it occurred. Since no objection was made when the matter could have been remedied, the failure to object constitutes a waiver and the matter cannot be raised for the first time on appeal. *Sims v. Majors*, 178 Ga. App. 679, 681 (3) (344 SE2d 501).

*Judgment affirmed. Ruffin, J., concurs. Andrews, P. J., concurs specially.*

ANDREWS, Presiding Judge, concurring specially.

International Indemnity Company (IIC) provided workers' compensation insurance to Regional Employer Service, Inc. (RES) under the assigned risk pool for employers unable to otherwise obtain insurance. In response to IIC's suit against RES to collect insurance premiums claimed to be due, RES answered, denied owing the premiums, and counterclaimed against IIC seeking business damages allegedly caused by incorrectly calculated and excessive yearly premiums charged by IIC for a renewal insurance policy from September 1992 to September 1993. The counterclaim in tort was based on allegations that IIC negligently failed to comply with provisions of OCGA § 34-9-136 requiring that, before IIC was authorized to submit statistical data on RES to the licensed rating organization for purposes of calculating the premium to be charged, IIC was required to verify the accuracy of the data with RES. RES contended that, because IIC negligently failed to verify the data as required by OCGA § 34-9-136, IIC submitted incorrect data for calculation of the premium which caused an erroneous 400 percent increase in the yearly premium charged by IIC. RES alleged that, after it was unable to pay the increased premium, IIC cancelled the insurance policy for nonpayment of the premium, which forced RES out of business and caused the damages at issue.

RES also alleged in its counterclaim that IIC negligently failed to comply with the notification provisions of OCGA § 33-24-47 prior to cancellation of the policy for nonpayment of the charged premium. However, this claim was apparently abandoned, as no evidence was introduced to support it, nor was the jury charged on the claim. In any event, OCGA § 33-24-47 does not require notice when an insurer offers to renew a policy and coverage is cancelled because of nonpayment of the renewal premium. *Riley v. Taylor Orchards*, 226 Ga. App. 394, 395-396 (486 SE2d 617) (1997).

The case was tried before a jury. As to IIC's claim for premiums due, the jury rendered a verdict in favor of RES. As to RES' counterclaim for violation of OCGA § 34-9-136, the jury rendered a separate verdict in favor of RES and awarded business damages and attorney fees.

On appeal, IIC does not contest the jury verdict in favor of RES on IIC's claim for unpaid premiums. Rather, IIC contests the separate verdict on RES' counterclaim by contending in various enumerations of error that: (1) even if it violated the provisions of OCGA § 34-9-136, this would not support the tort claim brought by RES for damages to its business, and (2) even if such a tort claim existed, there was a lack of evidence to prove the amount and cause of the alleged business damages.

I agree in principle with IIC's contention that, even if it violated

OCGA § 34-9-136, RES was not entitled to bring the tort cause of action for damages to its business. Nothing in the language of OCGA § 34-9-136 evinces an intention by the legislature to create a cause of action for its violation. See *Parris v. State Farm &c. Ins. Co.*, 229 Ga. App. 522, 524 (494 SE2d 244) (1997); *Generali — U. S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 280-281 (493 SE2d 731) (1997). Moreover, even assuming that the statute as enacted could support a cause of action to protect RES from the type of damages it sued to recover, the suit was premature. The information-gathering requirements of OCGA § 34-9-136 are part of a statutory scheme under which the Commissioner of Insurance is empowered to regulate insurance rates for workers' compensation coverage. OCGA §§ 34-9-120 through 34-9-138; 33-9-1 through 33-9-44. Recognizing that regulation of insurance rates involves resolution of issues within the special knowledge and experience of the Commissioner, the legislature provided a statutory means to obtain a full hearing on these issues before the Commissioner along with the right of judicial review of actions taken by the Commissioner. OCGA §§ 33-9-26; 33-2-17 through 33-2-28; the Georgia Administrative Procedure Act (APA) (OCGA § 50-13-1 et seq.); see *Bailey v. Wilkes*, 162 Ga. App. 410, 412-414 (291 SE2d 418) (1982). Furthermore, OCGA § 50-13-21 of the APA provides that: "The Commissioner of Insurance, when performing the duties as Commissioner of Insurance, may satisfy the procedure for conduct of hearings on contested cases required under this chapter by following Chapter 2 of Title 33." Under the APA, " '[c]ontested case' means a proceeding, including, but not restricted to, *rate making*, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." (Emphasis supplied.) OCGA § 50-13-2 (2). Accordingly, RES would be required to pursue its claims before the Commissioner prior to institution of any suit for damages. *Bailey*, supra at 414; *First Union Nat. Bank &c. v. Independent Ins. Agents &c.*, 197 Ga. App. 227 (398 SE2d 254) (1990); *Provident Indem. Life Ins. Co. v. James*, 234 Ga. App. 403, 406-408 (506 SE2d 892) (1998).

Nevertheless, because IIC did not preserve the above issues for review on appeal, I am constrained to agree with the majority that the judgment in favor of RES' counterclaim must be affirmed. IIC contends the trial court erred by denying its motion in limine and its motion for a directed verdict seeking rulings on the cause of action based on OCGA § 34-9-136. However, in both motions IIC sought rulings on the issue of damages, not the issue of whether RES was entitled to institute the cause of action for violation of OCGA § 34-9-136. Moreover, the record does not show that the trial court ruled on the motion in limine. I concur with the majority's conclusions that there

was sufficient evidence on the issue of damages to sustain the verdict on the counterclaim and no other error requiring reversal.

DECIDED JULY 8, 1999 —
RECONSIDERATION DENIED JULY 29, 1999

*Michael L. Wetzel*, for appellant.
*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M. J. Webb*, for appellee.